UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ALLSTATE PROPERTY AND CASUALTY COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>TURPEN ET AL,<br><br>Defendant. | Case No. 3:24-cv-05462-TMC<br><br>ORDER DENYING MOTION TO STAY |

## I. INTRODUCTION

This case arises from an insurance coverage dispute between Plaintiff Allstate Property and Casualty Company ("Allstate") and Defendant Elton E. Engstrom, Jr. Before the Court is Defendant Engstrom's motion to stay this case until the underlying lawsuit in Kitsap County Superior Court is resolved (Dkt. 37). Defendants Susan M. Turpen and Kenneth P. Turpen (the "Turpens") take no position on the motion to stay (Dkt. 40). For the reasons explained below, the Court DENIES Defendant Engstrom's motion to stay.

## II. BACKGROUND

On March 7, 2024, the Turpens filed suit in Kitsap County Superior Court against Engstrom asserting claims of harassment, private nuisance, intentional infliction of emotional

ORDER DENYING MOTION TO STAY - 1

distress, and trespass. Dkt. 38-1 at 4–14; *see Turpen v. Engstrom*, Kitsap County Cause No. 24-2-00510-18. The state court complaint chronicles a decade-long dispute between the Turpens and Engstrom who reside in neighboring properties on Bainbridge Island. Dkt. 38-1 at 5. The Turpens allege that in 2010, they protested Engstrom's unauthorized cutting of vegetation on their property, which was done to improve Engstrom's view. *Id.* Since then, the Turpens assert that Engstrom has "engaged in a pattern of nuisance and harassment[.]" *Id.* For example, they claim Engstrom keeps tailgating them in their car, hitting his horn without provocation, making obscene hand gestures at them, and yelling insults such as "go back to California." *Id.* at 5–6. The Turpens allege that on over ten occasions in 2022, they captured Engstrom throwing garbage onto their property on their security camera. *Id.* at 8. They also allege that Engstrom deliberately deposited a chemical substance near the bases of multiple trees and shrubs on their property, which killed their trees and prevented new growth. *Id.* at 8, 10, 12. In response to Engstrom's actions, the Turpens sought and were granted several Harassment Protection Orders from the Kitsap County District Court, with the most recent order extending through May 31, 2028. *Id.* at 9.

Engstrom carried a House & Home Policy with Allstate. *See* Dkt 1-2. On March 27, 2024, Allstate informed Engstrom that it agreed to defend him in the state lawsuit subject to a reservation of rights. *See* Dkt. 38-2 at 2. While the state proceeding was ongoing, on June 11, 2024, Allstate filed a complaint in this Court. Dkt. 1. Allstate requested a declaration that "[t]here is no coverage or duty to defend or indemnify the lawsuit" because "[t]here is no defined 'occurrence' asserted in the Complaint" and the "Allstate Policy excluded the intentional and criminal acts alleged in the Complaint." *Id.* at 15. Engstrom moved to stay this case until the underlying state suit is resolved. *See* Dkt. 37. Allstate responded, *see* Dkt. 39, and Engstrom replied, *see* Dkt. 41. The motion is ripe for the Court's consideration.

ORDER DENYING MOTION TO STAY - 2

### III. DISCUSSION

#### A. Legal Standard

"The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 683 (1997) (citation omitted); *see Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants"). But "[t]he exertion of this power calls for the exercise of a sound discretion." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).

When considering a motion to stay, a court weighs a series of competing interests: (1) the possible damage that may result from granting the stay; (2) the hardship or inequity that a party may suffer in being required to go forward; and (3) the orderly course of justice measured in terms of the simplification or complication of issues, proof, and questions of law that could be expected to result from a stay. *CMAX*, 300 F.2d at 268 (citing *Landis*, 299 U.S. at 254). "*Landis* cautions that 'if there is even a fair possibility that the stay . . . will work damage to someone else,' the party seeking the stay 'must make out a clear case of hardship or inequity.'" *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005) (quoting *Landis*, 299 U.S. at 255).

#### B. Application of the *Landis* Factors Supports Denying a Stay

##### 1. *Hardship resulting from a stay*

Allstate argues it will suffer damage from "incurring costs by defending under a reservation of rights in the underlying matter" and that it "has an 'interest' in not continuing to incur the costs . . . when there is not a duty to defend Defendant Engstrom under the insurance policy[.]" Dkt. 39 at 4. Allstate contends that it is further harmed because if the Court finds that

Allstate owes no duty to Engstrom, under Washington law, it is not allowed to seek reimbursement from Engstrom for the defense costs already paid. *Id.* at 5.

Engstrom argues that the possibility Allstate "will be damaged by a stay is negligible." Dkt. 37 at 4. While Allstate will have to continue financing his defense, Engstrom maintains that the payment does not constitute damages for purposes of the stay analysis. *Id.* As support, Engstrom cites *Zurich American Insurance Company v. Omnicell, Inc.*, in which the court reasoned that "delaying a determination that [the insurer] owes [the insured] no coverage" does not harm the insurer because "advancing defense costs is part of an insurer's obligation and costs of doing business." 18-CV-05345-LHK, 2019 WL 570760, at *5 (N.D. Cal. Feb. 12, 2019) (cleaned up); Dkt. 37 at 5. Engstrom also argues that Allstate has a reservation of rights which insulates it from "potential claims of breach and bad faith, which can lead to significant damages, including coverage by estoppel." Dkt. 37 at 4–5 (citing *Nat'l Sur. Corp. v. Immunex Corp.*, 176 Wn.2d 872, 884, 297 P.3d 688 (2013)).

The Court disagrees. In *National Surety Corporation v. Immunex Corporation*, the Washington Supreme Court held that when the insurance contract does not expressly provide for reimbursement, "insurers may not seek to recoup defense costs incurred under a reservation of rights defense while the insurer's duty to defend is uncertain." 176 Wn. 2d 872, 887, 297 P.3d 688 (2013). Nevertheless, "[d]isallowing recoupment in this instance does not leave insurers without options to protect their interests" as the insurer may "obtain[] a judicial declaration that it owes no duty to defend." *Id.* at 887, 890. Thus, when no reimbursement clause is noted in the insurance contract and the insurer is seeking declaratory judgment on its duty to defend, courts in this District have weighed this factor against a stay. *See, e.g.*, *Northfield Ins. Co. v. Yates, Wood, & MacDonald, Inc.*, No. 2:24-CV-00441-TL, 2024 WL 4751181, at *2 (W.D. Wash. Nov. 12, 2024); *Gov't Emps. Ins. Co. v. Gerjets*, No. 19-CV-5912-RJB, 2020 WL 1031295, at *4 (W.D.

ORDER DENYING MOTION TO STAY - 4

Wash. Mar. 3, 2020) ("If a stay of proceedings is granted, GEICO may have to continue sharing the cost of Ms. Gerjets's defense in the underlying case. Therefore, to the extent that coverage is not warranted, this factor weighs in favor of denying a stay of proceedings.").

Here, Allstate asserts it does not seek recovery of defense fees as it does not have a reimbursement clause in its insurance contract. Dkt. 39 at 5; *see* Dkt. 38-2 at 2. Unlike the insurance company in *Omnicell*, Allstate has no means to recoup defense fees spent representing Engstrom in the underlying lawsuit if this Court later finds that Allstate had no duty to defend. *See Omnicell*, 2019 WL 570760, at *5. Accordingly, "to the extent that coverage is not warranted" this factor supports denying a stay. *Gerjets*, 2020 WL 1031295, at *4.

  2.  *Hardship in the absence of a stay*

Engstrom argues that allowing this action to proceed would cause him hardship for three reasons: (1) Engstrom would have to fight a "two-front war" by defending the underlying tort action and the coverage lawsuit; (2) Engstrom would risk having a factual determination on issues overlapping with the underlying lawsuit; and (3) Engstrom may be forced to take a position inconsistent with one he wishes to take in the underlying lawsuit to avoid liability. Dkt. 37 at 5–8; Dkt. 41 at 3.

First, Engstrom argues that by forcing him to litigate on two fronts, he would need to spend "precious resources fighting both the insurer and third-party action." Dkt. 37 at 4. Engstrom asserts that Allstate's conduct is harmful because "[a]n insurer defending under a reservation of rights has 'an enhanced obligation of fairness' towards its client arising from '[p]otential conflicts between the interests of insurer and insured, inherent in the reservation of rights defense.'" *Id.* at 6 (quoting *Tank v. State Farm Fire & Cas. Co.*, 105 Wn.2d 381, 385 (1986)).

ORDER DENYING MOTION TO STAY - 5

Second, Engstrom contends that there are factual issues raised in this insurance coverage dispute that overlap with those in the underlying lawsuit, which risk inconsistent results. Dkt. 37 at 6–7. For example, Allstate asserts that there is no coverage because the policy covers only an "occurrence" which is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in bodily injury or property damage." Dkt. 1 at 11; *see* Dkt. 38-2 at 15. At the same time, Engstrom argues that whether his actions exposed "the Turpens to continuous or repeated harmful conditions is the *very issue* to be determined in the Underlying Lawsuit." Dkt. 37 at 7. Similarly, Allstate alleges that there is no coverage because the policy excludes intentional and criminal acts. Dkt. 1 at 13; *see* Dkt. 38-2 at 15. Engstrom argues that whether his conduct towards the Turpens were intentional or criminal "is the subject of the Underlying Lawsuit" and those facts should be developed there first. Dkt. 37 at 9.

Third, Engstrom asserts that developing evidence to establish coverage here would force him to prove a fundamental element of claims against him in the underlying lawsuit. Dkt. 37 at 8. For instance, in the coverage lawsuit, Engstrom may want to prove that the Turpens suffered property damage caused by an "occurrence." *Id.* But in the underlying lawsuit, Engstrom may want to deny any property damage exists at all. *See id.*

Allstate responds that "[it] is not seeking any such determination as to any facts which would have any effect on the disposition of the underlying state court matter." Dkt. 39 at 6. Allstate argues it is not "attacking" Engstrom, but only "seeking a [d]eclaratory [j]udgment regarding coverage and indemnification[.]" *Id.* Since the duty to defend is generally determined from the "eight corners" of the insurance contract and underlying complaint, Allstate contends that neither discovery nor findings of fact will be necessary here. *Id.* at 5. Therefore, adjudicating the coverage lawsuit will have no effect on the merits of the underlying controversy. *Id.* at 6.

ORDER DENYING MOTION TO STAY - 6

The Court agrees. In evaluating the hardship that a party may suffer in being required to litigate a coverage claim while the underlying lawsuit is ongoing, courts have weighed the following concerns:

> The first concern is that by bringing the action for declaratory judgment regarding coverage, the insurer effectively attacks its insured and thus gives aid and comfort to the claimant in the underlying suit. The second concern is that the suit addressing insurance coverage forces the insured to fight a two-front war, thereby expending its resources fighting both the insurer and the third-party action, which undercuts one of the primary reasons for purchasing liability insurance. The third concern is the real risk that, if the declaratory relief action proceeds to judgment before the underlying action is resolved, the insure[d] could be collaterally estopped to contest issues in the latter by the results in the former.

*Gerjets*, 2020 WL 1031295, at *4 (citation omitted).

None of the three concerns are present here. To start, "[t]he duty to defend arises when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage." *Expedia, Inc. v. Steadfast Ins. Co.*, 180 Wn.2d 793, 802–03, 329 P.3d 59 (2014*), as corrected* (Aug. 6, 2014) (cleaned up). Therefore, the duty to defend is generally "determined from the 'eight corners' of the insurance contract and the underlying complaint." *Id.* at 803. Here, the Court will decide pure questions of law pertaining to whether actions alleged in the Turpens' complaint are covered under Allstate's policy, and there will be no findings of material fact that affect Engstrom's state court defense. *See id.*; *see also Evanston Ins. Co. v. Clartre, Inc.*, 158 F. Supp. 3d 1110, 1114 (W.D. Wash. 2016) ("duty to defend cases turn on the purely legal questions of interpretation of insurance policies and complaints"). Allstate further notes that it is not conducting discovery and will not develop any facts or evidence that are at issue in the underlying lawsuit. *See* Dkt. 39 at 3. Thus, Allstate's declaratory action will not provide "aid and comfort" to the Turpens nor will it force Engstrom to fight a "two-front war." *See Gerjets*, 2020 WL 1031295, at *4.

ORDER DENYING MOTION TO STAY - 7

Next, there will be no overlapping legal issues such that resolving the insurance coverage dispute will prejudice Engstrom's tort defense. The Court will not determine whether Engstrom engaged in the conduct alleged in the underlying complaint. Instead, it will decide whether the allegations trigger Allstate's duty to defend based on the policy's definitions and exclusionary clauses. *See Homesite Ins. Co. v. Zajac*, 481 F. Supp. 3d 1198, 1202 (W.D. Wash. 2020) ("In a declaratory action, the issue before the Court is whether coverage exists under the applicable policy for the various claims in the Underlying Action."). There is no real risk that Engstrom will be "collaterally estopped to contest issues" in the state proceeding due to the results of this case. *See Gerjets*, 2020 WL 1031295, at *4. Accordingly, this factor supports denying a stay.

    3.    *Orderly course of justice*

Finally, the orderly course of justice does not support a stay. This factor is "measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX*, 300 F.2d at 268 (citing *Landis*, 299 U.S. at 254–55). Here, the coverage dispute raises issues that are independent of those in the underlying state lawsuit, and staying the case will not simplify the issues presented to this Court. Additionally, for the reasons explained above, *see supra* Sec. III.B.1, waiting for the underlying case to resolve would be prejudicial to Allstate. Thus, this final factor also supports denying a stay.

## IV.    CONCLUSION

After evaluating the *Landis* factors, the Court concludes that all three factors support denying a stay of the proceeding. For the reasons explained above, Engstrom's motion to stay (Dkt. 37) is DENIED.

Dated this 28th day of March, 2025.

Tiffany M. Cartwright
United States District Judge